Speer & Hooks *vs.* Hart.

SPEER & HOOKS, plaintiffs in error, *vs.* SAMUEL G. HART, defendant in error.

BY TWO JUDGES.—1. The Statutory factor's lien covers only the crop. (R.)

2. Where a factor makes an affidavit that a planter is indebted to him for money loaned to purchase supplies to make a crop, to secure the payment of which, and costs, and counsel fees, such planter gave a draft for the money, containing a lien on his crop and stock of all kinds, in which lien it did not appear that the money was to be used to purchase said supplies, and which affidavit was made to foreclose said lien, under section 1977, of the Revised Code, before a Judge of the Superior Court of a different circuit from that in which the property was situated:

*Held,* That the lien is not such an one as can be foreclosed in the manner pointed out by section 1977 of the Code.

3. If it was, the affidavit was not made before an officer authorized to foreclose the lien under that section. (Query?) 5th March, 1872.

Factor's liens.    Before Judge JOHNSON.    Marion Superior Court.    October Term, 1871.

The facts are in the opinion.

HAWKINS & GUERRY, by REPORTER, for plaintiffs in error.    As to factor's liens:  Acts of 1866, page 141 ; R. Code, section 1977.    Construction of Statutes, etc. :  R. Code, sec. 4, cls. 6, 9 ;  3 Kelly, 31.

HINTON & SON;  E. H. WORRILL, for defendant.

MONTGOMERY, Judge.

This was an affidavit, made  before  Judge James M. Clark, of the South Western Circuit, to foreclose a factor's lien on the crop and stock of the defendant, grown in Marion county, of the Chattahoochee Circuit.

It appears, from  the affidavit, that the money was  loaned by the plaintiffs to the defendant " for the purpose of furnishing supplies to enable him to make his crops  for  the present year."    Whether the money was  ever  so  used or  not, does not appear.    It further  appears, from  the same source, that defendant " gave to Speers  & Hooks his draft  for  the payment of said sum, dated 2d May, 1870, in which, in order to secure  the payment of said sum, costs and  counsel fees, he gave them in writing a lien on his cotton and corn crops, growing,  the  present  year, on  his  plantation, in  Marion county, and a lien also on his stock  of all kinds."    No copy of  the draft containing the lien accompanies the  record. Hence, the Court is compelled to look to the affidavit alone, for the provisions creating the lien.    These are all of the material  statements  of the affidavit.    It nowhere appears that the money was expended either for *provisions* or *commercial manures,* or, indeed, for any supplies.    Nor does it appear, in the lien, that the money was to be so used, so far as we can gather from the affidavit.    The affidavit is made to obtain

execution, not only against the crop, but against the "stock of all kinds," and for counsel fees, amounting to $97.28, as well as the sum loaned.   The execution follows the affidavit; and the sheriff levies upon ten bushels of corn, about twelve thousand pounds of seed cotton, and over four hundred bushels of cotton seed, besides nine horses and mules, one yoke of oxen, and several cattle.   The debt, besides counsel fees, was for about $2000.

1. Section 1977 of the Code only gives a lien to factors *upon the growing crops* of farmers " for *provisions* and commercial manures furnished;" and provides a mode of enforcement, to-wit, as steamboat liens are enforced, under section 1969. And it is under *this* law that this lien is attempted to be enforced.   It would hardly be seriously contended that the foreclosure, execution and levy, so far as the *stock* is concerned, is regular.   However good the lien given may be as a mortgage (and we have no means of ascertaining, for we have it not before us), the sections quoted do not provide for so foreclosing a mortgage upon personalty.

2. As to the crop, if provisions or manures had been furnished, the lien would have been good.   The money was loaned "for the purpose of furnishing *supplies* to enable him to make his crops."   What kind of supplies?   Mules, wagons, ploughs, etc., are as much supplies to make a crop as are provisions.   But suppose supplies mean provisions—were they ever bought with the money?   The affidavit does not so state; nor does it mention that the draft, which seems to have been a reduction of the agreement of the parties to writing, even stated that the money was borrowed, or intended to be used for that purpose.   The only knowledge we have upon the subject is, that the affidavit says the money was loaned for the purpose, and that afterwards, or about the time some agreement, in writing, in the shape of a draft, was entered into, of the terms of which we are not very clearly informed, or that it even intended to create a factor's

lien. As this is a summary proceeding, everything required by the Act to be done must appear to have been done; nor can its provisions be extended to purposes other than those mentioned in the Act.

3. During the argument of this case, the attention of the Court was not drawn to the Act of September 16, 1870, amendatory of section 1969 of the Code. Hence, the decision, from the bench, that the affidavit was not made before an officer authorized to foreclose the lien, under that section. It is, however, questionable whether, even under that section, the affidavit can be made before any Judge of the Superior Court in the State. It is unnecessary to discuss the question now. It may be considered still open. If the lien was a mortgage of personalty, as it was, if it was anything, as to the stock, clearly it was not foreclosed before the proper officer, unless Hart lives in Judge Clark's circuit, and the usual order was passed, which cannot be so, as the affidavit is filed in the office of the Clerk of the Superior Court of Marion county, and he issues the execution : Code, section 3895.

Judgment affirmed.